# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| THEODORE YANCY, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 4986 |
| | ) | |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| VILLAGE OF MAYWOOD, JASON | ) | |
| ERVIN, individually, and as agent of the | ) | |
| VILLAGE OF MAYWOOD, and JOE | ) | |
| PONSETTO, individually, and as agent | ) | |
| of the VILLAGE OF MAYWOOD, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff sues the Village of Maywood, Jason Ervin and Joe Ponsetto for their alleged violations of his rights under the Fourteenth Amendment, the Fair Labor Standards Act ("FLSA") and state law. Before the Court is defendants' Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss the Fourteenth Amendment, FLSA and state tortious interference claims.[1] For the reasons set forth below, the Court grants in part and denies in part the motion.

## Facts

In 1995, plaintiff started working as a police officer for the Village of Maywood. (1st Am. Compl. ¶ 8.) In 2007, he became a Sergeant and was promoted to Supervisor of Investigations. (*Id.* ¶ 11.) In June 2009, he was promoted to Commander. (*Id.* ¶ 17.)

---

[1]Defendants do not move to dismiss the Illinois Wage Payment and Collection Act and malicious prosecution claims plaintiff asserts in the remaining counts.

In July 2009, however, the Maywood Police Chief put plaintiff on administrative leave pending an investigation. (*Id.* ¶ 19.) The Chief did not tell plaintiff why he was being investigated or question plaintiff about any alleged misconduct. (*Id.* ¶¶ 19, 21, 23.)

After being put on leave, plaintiff started working as a security officer at a local school, Proviso Area for Exceptional Children ("PAEC"). (*Id.* ¶¶ 26-27.) Neither the Police Chief nor the administrators of PAEC objected to his working there while on leave. (*Id.* ¶¶ 30-31.) Plaintiff worked for PAEC without incident during the 2008-09 and 2009-10 school years and expected to return for the 2010-11 school year. (*Id.* ¶¶ 27-28.)

In March 2010, defendants Ervin and Ponsetto, who were Maywood's Assistant Village Manager and Village Manager, respectively, instructed Maywood police officers to tell PAEC's principal that plaintiff's employment there violated Police Department rules. (*Id.* ¶ 34.) Subsequently, Ponsetto personally urged the principal to terminate plaintiff. (*Id.* ¶ 36.) When the principal declined to do so, Ervin and Ponsetto sent Maywood police officers to the school to performed an unwarranted search of plaintiff in the principal's presence. (*Id.* ¶¶ 37-38.) Immediately thereafter, PAEC put plaintiff on administrative leave and cancelled his contract for the 2010-2011 school year. (*Id.* ¶ 39.)

At the end of August 2010, after 396 days of administrative leave, plaintiff was reinstated to the Maywood Police Department. (*Id.* ¶¶ 42-43.) Plaintiff was not, however, reinstated to a Commander position. (*Id.* ¶ 48.) Rather, he was put on desk duty, barred from wearing a uniform and working overtime and denied his uniform allotment and vacation pay. (*Id.* ¶¶ 48-49.) Plaintiff asked the Village to investigate his complaints and hold a hearing on the propriety of his leave, but the Village ignored his requests. (*Id.* ¶ 52.)

In February 2011, the Police Department reinstated plaintiff to a supervisory position. However, plaintiff has yet to receive his uniform allotment and unpaid vacation time. (*Id.* ¶ 63.)

## Discussion

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**Fourteenth Amendment**

In Counts I and VII, plaintiff seeks to recover damages for defendants' alleged deprivation of his property interest in the Commander position and occupational liberty without due process in violation of the Fourteenth Amendment. The latter claim is easily dispatched. The Fourteenth Amendment protects an individual's right "to follow a trade, profession, or other calling," but does not protect his right to hold a specific job. *Lawson v. Sheriff of Tippecanoe Cnty.*, 725 F.2d 1136, 1138 (7th Cir. 1984). Accordingly, to state a viable occupational liberty claim, plaintiff must allege that defendants' actions have effectively "blacklisted" him from law enforcement, so that it is virtually impossible for him find a job in that field. *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001). Plaintiff, who is still working as a Maywood police officer, cannot make such an allegation. Thus, he cannot state a viable claim for deprivation of occupational liberty.

Plaintiff's property deprivation claim is apparently based on plaintiff's suspension from the Commander position. (*See* 1st Am. Compl. ¶¶ 17, 19.) Whether plaintiff has a constitutionally-protected property interest in that position is a question of state law. *Moulton v. Vigo Cnty.*, 150 F.3d 801, 804 (7th Cir. 1998). As relevant here, state law provides that Maywood police officers, except the Chief, Deputy Chief and Commanders, are appointed by the Maywood Board of Fire and Police Commissioners ("Commission") and can be suspended for more than five days only for cause and after notice and an opportunity to be heard. 65 Ill. Comp. Stat. 5/10-1-18(b), 10-2.1-17; Vill. Maywood Code § 31.21(C), (E). Maywood Police Commanders, however, are appointed and removed by the Village Manager, not the Commission. *See* Vill. Maywood Code §§ 30.04 (E)(2),(13), 31.21(C). Moreover, plaintiff has not cited and the Court has not found, any Village or state law that makes the Commander position anything other than at-will. *See Moulton*, 150 F.3d at 804 ("Protected property interests can arise from such state law sources as statutes, contracts, legally binding rules and regulations, or the unwritten common law of employment.") (quotation omitted). Thus, plaintiff has not alleged a viable Fourteenth Amendment claim for deprivation of the Commander position.

Plaintiff fares no better if his complaint is construed as alleging that he was suspended before the Commander promotion took effect or was deprived of wages or benefits he earned in his pre-Commander position. (*See* 1st Am. Compl. ¶¶ 17-18 (alleging that plaintiff was promoted to Commander in June 2009 and suspended in July 2009 but that his salary "was to increase" when he became Commander).) Though state law gives plaintiff a property interest in a Village police officer position lower than Commander, the Village and the individual defendants in their official capacities can be liable under § 1983 for depriving plaintiff of that interest only if they did so pursuant to a

4

Village policy. *See* 65 Ill. Comp. Stat. 5/10-1-18(b) (Illinois Municipal Code provision stating that no police officer appointed by Commission may fired or suspended for more than five days "except for cause upon written charges and after an opportunity to be heard in his own defense"); Vill. Maywood Code §§ 31.21(C), (E) (stating that the Commission hires and fires all police officers except the Chief, Deputy Chief and Commanders); *see also Kentucky v. Graham*, 473 U.S. 159 (1985) (holding that an official capacity claim is the same as a claim against the government employer); *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding that municipalities can be held liable under § 1983 only if the alleged constitutional injury was caused by the execution of one of its policies). A policy in this sense is an express law or rule, a practice so widespread and permanent that it has the force of law or action by a person with final policymaking authority. *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000).

Plaintiff alleges that the Village has a *de facto* policy of "adopting and condoning the [unconstitutional conduct of] Ervin and Ponsetto[]." (1st Am. Compl. ¶ 71.) The complaint might support that inference, if it contained facts suggesting that Ervin and Ponsetto routinely flouted Village employees' constitutional rights and the Village condoned their conduct. *See Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) ("If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work . . . ."). But it does not. It simply alleges that Ervin and Ponsetto acted unconstitutionally in this instance, which is "generally insufficient to establish municipal acquiescence in unconstitutional conduct." *Cornfield ex rel. Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993).

5

Alternatively, plaintiff argues that his injury was caused by the action of Village final policymakers, Ervin and Ponsetto. (*See* 1st Am. Compl. ¶¶ 70-72.) According to the Maywood Code, the Village Manager is a final policymaker with respect to a host of issues. *See generally* Vill. Maywood Code § 30.04(E)(1)-(14) (setting forth the Village Manager's powers and duties). However, the suspension of police personnel below the rank of Commander is not among them. *See id.* § 31.21(C) (stating that the Commission appoints all police officers except the Chief, Deputy Chief and Commanders). Thus, Ervin and Ponsetto are not, as a matter of law, final policymakers with respect to employment decisions for police officers under the rank of Commander.

Plaintiff's failure to allege a municipal policy responsible for his injury also dooms his personal capacity claims against Ervin and Ponsetto. They can be held personally liable for the alleged Fourteenth Amendment violation only if their conduct was, from the Village's perspective, predictable, and there are no adequate state-law remedies for plaintiff's loss. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). If Ervin and Ponsetto suspended plaintiff for more than a year without cause, notice or a hearing, then they violated both Maywood's ordinances and Illinois law governing the suspension of police officers. Because the Village could not anticipate that its employees would violate the law, defendants' alleged conduct was random and unauthorized. *See Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003) (holding that actions contrary to state law are random and unauthorized).

Moreover, even if defendants' alleged conduct were predictable, plaintiff would have to show that state-law remedies are inadequate to proceed with his claim. *See Hudson*, 468 U.S. at 533 (stating that a valid § 1983 procedural due process claim requires a showing that state does not provide "a suitable postdeprivation remedy"). Plaintiff has not made and cannot make this showing,

6

given his assertion of state-law claims for tortious interference and violation of the Illinois Wage Payment Act.

**Tortious Interference**

In Counts II and III, plaintiff alleges that defendants tortiously interfered with his 2009-10 contract with PAEC and his prospects for entering into future contracts with it. Defendants argue that these claims are time-barred. Even if that is true, untimeliness is an affirmative defense, which can be the basis for a Rule 12(b)(6) dismissal only if plaintiff "admits all the ingredients of an impenetrable defense." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Because plaintiff has not done so here, there is no basis for dismissing the tortious interference claims.

**FLSA**

In Count IV, plaintiff alleges that the Village violated the FLSA by failing to pay him a uniform allowance and vacation pay after he was reinstated. (*See* 1st Am. Compl. ¶¶ 49, 57, 85.) FSLA requires employers to compensate employees at certain rates for their work, but does not require them to pay employees for vacation time or uniforms. *See* 29 C.F.R. §§ 778.271(b)(2), 218(a). Thus, plaintiff's FLSA claim must be dismissed.

**Conclusion**

For the reasons set forth above, the Court: (1) grants in part and denies in part defendants' motion to dismiss [17]; (2) dismisses with prejudice the FLSA claim (Count VI), the Fourteenth Amendment occupational liberty claim (the second Count VII) and any Fourteenth Amendment deprivation of property claim based on plaintiff's suspension from the Commander position (Count I); (3) dismisses without prejudice any Fourteenth Amendment deprivation of property claim based on plaintiff's suspension from a police position lower in rank than Commander; and (4) denies defendants' motion to dismiss the tortious interference claims (Counts II and III). Plaintiff has fourteen days from the date of this Memorandum Opinion and Order to amend any Fourteenth Amendment deprivation of property claims based on his suspension from a police position lower in rank than Commander. If he fails to do so, the Court will dismiss with prejudice any such claim.

**SO ORDERED.**                                **ENTERED:**

**May 9, 2012**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**